Mark Crawford et al. v. Department of Treasury et al. Rule of argument not to exceed 15 minutes per side. When ready, Mr. Cobb will be appointed. My name is Jim Bopp. I'm attorney for the plaintiffs below, and we request five minutes for rebuttal. This case involves a constitutional challenge to two federal statutes and several intergovernmental agreements which require U.S. citizens with foreign assets to be subject to substantial reporting of their confidential financial information to the IRS and to foreign governments, a regime that is not imposed on U.S. citizens with U.S. assets. Despite this loss of privacy, despite the financial hardship resulting from foreign banks refusing to do business with U.S. citizens living abroad due to these laws, and despite the personal hardship resulting from the disruption of family financial life due to foreign spouses refusing to allow their confidential financial information to be disclosed to the U.S. government, and despite the fact that these laws have driven U.S. citizens to renounce their citizenship, the court below held that these U.S. citizens suffered no injury. And so doing, the court below committed six errors in refusing to allow an amendment to a complaint, failing to recognize that this is a pre-enforcement challenge that does not require that the penalties available under these laws have been enforced against the plaintiffs, refused to accept as true the well-pleaded allegations of the complaint, allowed the litigation of a motion to dismiss when the only motion before the court was to amend the complaint, failed to recognize a privacy interest in financial information when the laws required their disclosure to U.S. government and foreign governments in bulk and without judicial review, erroneously viewed the decision of foreign banks coerced by draconian penalties as, quote, would redress the plaintiff's injuries. Now, this is a pre-enforcement challenge. The district court erroneously pointed to the fact that despite the fact that we have plaintiffs that have refused to file the required reports, pointed to the fact that these laws had not been enforced against them and subjected these plaintiffs to penalties. However, the recent Supreme Court case in Susan B. Anthony v. Driehaus, and in fact the government acknowledges this line of cases on page 31, such enforcement is not required. This is a pre-enforcement challenge. And as long as we have alleged a conduct that arguably subjects these plaintiffs to the law, which we believe we have, then we can challenge the constitutionality of the laws. Secondly, the allegations of the amended complaint needed to be considered and deemed as true. In drafting a complaint, only claims with facial plausibility need to be alleged, all reasonable inferences. Counsel, in the amended complaint, what is, in your view, the major allegation you make for those amendments that would cure various deficiencies that the court found in your first complaint? Well, I think there are two. The first is that in the original complaint, there were various people that were adversely affected by these laws, spouses, the daughter of one of the plaintiffs that was a U.S. citizen, that the court pointed to them and said that they were not plaintiffs and that their interests would not be considered. That has been cured by the amended complaint. The specific people that are brought in, is this Lois, Lois Kirtle, the daughter? Yes. That one. Who else? Well, the wife of Mr. Johnson, the plaintiff. She is a lawyer, Czech citizen and lawyer, who has refused to allow her confidential file. That's what I'm trying to focus on. I'm sorry. Well, it's a little confusing. I'm trying to distinguish between the ones. Yes. And it's a little confusing because this was a motion to allow an amended complaint, and the government spent almost their whole brief talking about the original complaint rather than the — You've got both claims. Let me ask you this. Am I correct that all of your challenges are to the substance of the reports, not to the time and trouble of having to file them? The substantive requirement of the disclosure and, furthermore, the penalties, the draconian penalty applied to these foreign banks, which is the penalty for either failing to — That's what you would call the FATCA withholding tax? Yes, of 30 percent applied to banks because banks under FATCA are required to report to the IRS. Is there any indication that that has ever been imposed on anyone? Well, there was a Swiss bank that had purchased another bank and immediately proceeded to aggressively purge all the U.S. accounts. However, they overlooked four of them and were then — They overlooked what? They overlooked four — I'm sorry, 44 of the accounts held by U.S. citizens. The result was the IRS came in, they negotiated a settlement rather than the imposition of the 30 percent, and paid several million dollars to the IRS. Banks are not parties to this. No. So are you, in a sense, arguing for third-party standing? No, no, not at all. We're not claiming any — the ability to assert the rights of banks. What we are saying is that these laws affect us just the way a law prohibiting abortion and penalizing a doctor affects a woman because a doctor won't perform an abortion because they'd be subject to criminal penalties. Well, here the banks have two choices. They either purge themselves of all U.S. account holders, which most have done, or two, that they report all U.S. account holders either under IGAs to their own government that goes to the IRS or directly to the IRS, depending on the circumstances, or they are subject to a 30 percent penalty on all transfers from the United States to every account holder in the bank. So it's not a 30 percent on this one U.S. account holder. It's a 30 percent on all money flowing from the United States from any source to anyone in the bank. That is draconian. And, of course, no bank has, quote, as the government says, chosen to suffer a 30 percent penalty, and so they've either purged or reported. By analogy about the relation between the independent, allegedly independent banks, whatever the financial regulatory body or Congress has imposed, this fiduciary rule on investment advisors that they can't self-deal and they have to have a fiduciary relationship. And people said, well, they're just going to purge a lot of accounts. And, in fact, it happened to me. They said, we don't want you anymore. Would I have standing to challenge the imposition of that fiduciary rule on my investment advisor because they think I'm not worth dealing with? It could very well be, but I haven't considered that possibility, nor am I an expert in this area of the law. I mean, in general, the government does lots of things that cause people to then do something else. And isn't that like third-party standing? No. Or wouldn't it give everyone standing to? The government has a 55-mile-an-hour speed limit. That slows down the trucks from delivering, and my fish spoil because they don't get it to me in time. They used to drive 75, and I'd get my fish just fine, and I'm a restaurant. It hurts my business. I don't have fish. How do you draw the line in terms of, or are there cases that try to tell us how to draw the line between direct effect, in effect, and collateral effects? Well, number one, we've already crossed the bridge on whether or not a law that applies to someone else that adversely affects you can be challenged by you based upon your rights. Is that the abortion cases? That's one of them. Another good example that has been. Worden? I'm sorry? I didn't hear the name. Worden. But I think the clearest example is Doe v. Bolton. I mean, it's unquestionable, and the parallel is stark. The bank is going to be charged a 30 percent tax, which could be millions and millions and millions of dollars, unless they do one of two things and notify the IRS, either report all the accounts or purge themselves of all the accounts. They even have to report to the IRS that they purged all the accounts. So this is a choice mandated and coerced by these draconian penalties to treat U.S. citizens in one of two ways. First, report their financial information to the IRS, violating, in our view, their rights under Miller footnote 6. The second example, which is when you do not do that, and that's not a First Amendment example. The second example is when there are these bulk requests for information, demands for information that involve intimate affairs of individuals, and there's no judicial review. I mean, that almost describes to a T our current case. But this choice is mandated by the FACA law, either 30 percent or do one of two things, report or purge. Thank you, counsel. I may have a question. Do either of my other colleagues have further questions? Let me ask you this with respect to Mr. Zell, the Israeli lawyer, American-Israeli lawyer. One of the issues there, as I understood it, was that this IGA with respect to Israel had been assigned or whatever but had not gone into effect. My information from public record is that that now has gone into effect. Obviously, it doesn't directly affect this case, but does that affect the legal argument that you would make in any way, that if it is in effect as opposed to when it's not in effect? Well, it removes an argument by the U.S. government about the fact that that section is not yet into effect. But I think the thing I would want to say is this. It is true that we have the underlying FACA law that has its own requirements that apply to banks and individuals. And then on top of that have been placed these intergovernmental agreements which change how this is done. It's now reported not directly, but banks are doing it in lieu of individuals, and banks are reporting to foreign governments that are to provide the information to the IRS. We have challenged that scheme, okay? So if the intergovernmental agreement in Israel is struck down, as we believe it should be, because it's not been ratified or in any other way approved by the government or by an existing treaty or by Congress, if that is so, then Mr. Zell is subject to the original requirements of FACA, which we have then also challenged. And those agreements are, in effect, with respect to at least some of the countries that are involved with your other All but Albania. All right. Thank you, Counsel. Thank you. Five minutes. Good morning, and may it please the Court. My name is Richard Calderoni on behalf of the Appalese. District Court correctly held that plaintiffs lack standing to raise any of the claims at issue in this case. Plaintiffs seek to challenge three separate sets of reporting requirements, individual reporting requirements under FATCA, the institutional reporting provisions of FATCA and associated intergovernmental agreements, and a specific provision on the FBAR form. Now, we go through a number of reasons in the brief why plaintiffs don't have standing to challenge the individual reporting requirements of FATCA. But the most fundamental and straightforward is that none of the plaintiffs has alleged facts which, if proven, would show that they are subject to those requirements. The institutional reporting provisions of FATCA have a minimum amount in foreign financial assets below which the reporting provisions do not apply, and none of the plaintiffs, either in the original complaint or the proposed amended complaint, has alleged an asset to merit in excess. Is this the $200,000? I thought Crawford and Zell had alleged over $200,000. Am I wrong? None of the plaintiffs has alleged over $200,000, Your Honor. I don't think Crawford has even made the attempt. Zell alleges that he has signatory authority over $200,000 in accounts, but those are not his accounts. Those are his clients' accounts, and his clients are therefore considered the account holders for these purposes, not Zell. So he alleges, doesn't he, though, that some or all of them will not in fact do business with him because he's going to have to get rid of those accounts once the IGA goes into effect? Your Honor, I think these are two separate sets of allegations that Mr. Zell makes. One is that he currently has signatory authority over $200,000 worth in accounts, which as far as inquiries or reporting under FATCA related to Mr. Zell is concerned is simply irrelevant. The other is that he has in the past, before the IGA with Israel entered into force, had clients who would not do business with him as a result of the practice of Israeli banks to give them inquiries. Does that mean that he's likely that he would have standing after the IGA if he makes the appropriate allegations again? No, Your Honor, for a couple of reasons. Just to transition to the institutional reporting positions of FATCA, neither Zell nor any of the other plaintiffs save Roger Johnson suggests that they have an account balance that's sufficient to trigger those provisions as to them. So when Mr. Zell says that he's suffered a financial loss because Israeli banks will give inquiries to prospective clients and those prospective clients therefore won't do business to him, this has nothing to do with his alleged equal protection and Fourth Amendment rights on which the challenge to these provisions is supposedly based because it has nothing to do with the application of the statute to his accounts. Rather, this is an injury that he alleges from the supposed, assuming for the moment that plaintiff's traceability argument is correct, from the application of FATCA to the accounts of third parties and that implicates the rights of those third parties. And that means this is, in fact, a claim for third party standing even though plaintiffs in the complaint have made no attempt to satisfy the prerequisites to third party standing. So if the plaintiffs tried to amend their complaint to state that some or all of these individuals did have accounts in excess of $200,000 of their own, would they have standing based on everything else remaining the same in their complaint? No, Your Honor, they wouldn't. I think only two of the plaintiffs have made any allegations that even colorably go to the individual reporting requirements of FATCA. One is Stephen Kish who simply alleged in the complaints that he disagrees with his wife about FATCA and that's not a concrete injury that can give rise to standing. The other is Roger Johnson and he's the only plaintiff who alleges an account balance in excess of the threshold that triggers the institutional reporting provisions of FATCA in the proposed amended complaint. But his alleged injury is that he and his wife have separated their accounts and that as a result he has lost an ownership interest in various assets. But nothing in either FATCA reporting regime requires the Johnsons to separate their assets and as the district court held, they're free to reverse that separation at any time. This was a voluntary decision. Moreover, it was a voluntary decision according to the complaint that was made to vindicate a supposed constitutional privacy right in the Johnsons' account information. But that's a privacy right that the Supreme Court squarely held in Miller does not exist. There simply is no reasonable expectation of privacy in account information under United States law. Back to the so-called Bank Secrecy Act? Yes, Miller concerned the Bank Secrecy Act, Your Honor, which is the same statute that contains the FBAR requirement. You say Johnson does have over $200,000 or so alleges? Not $200,000, Your Honor. He has over an account he alleges that is over $75,000, which means that that account would be subject to the FATCA institutional reporting provisions but not the individual reporting requirements. But because Johnson and his wife voluntarily separated their assets to ward off a nonexistent violation of a constitutional right, any injury that Johnson has suffered from this action is not fairly traceable to the statute. It is rather self-inflicted. What's your sort of best or quickest response to the Novy Bolton abortion example? Women bring the suit. The counterargument is nothing's happening to you. It's only happening to the doctors, and of course the doctors won't do it under criminal penalties. Your adversary says, well, look at how much this hurts a bank. It's just as draconian as the criminal penalties. Your Honor, I believe that in the abortion cases, the women were suing to vindicate their own constitutional rights. And in the situations where you have people like Crawford and Zell alleging injury because they've lost clients, this isn't an attempt to vindicate their own constitutional rights, nor is it an attempt to vindicate their own Eighth Amendment rights by challenging a withholding tax that applies only to financial institutions. That's an attempt to vindicate the Eighth Amendment rights of the financial institutions, which means we're in the third-party standing arena. There are some serious penalties on individuals, aren't there, who are recalcitrant? Your Honor, it's actually a tax and not a penalty in the statute. We'll pass that fight. The Supreme Court can get enough fuss with it in the Obamacare. Exactly, Your Honor. But here, because none of the plaintiffs except Johnson has any accounts that are subject to FATCA, they can't possibly be subject to the withholding tax. In addition, as Mr. Bopp conceded here today, to bring a pre-enforcement Eighth Amendment challenge to this withholding tax, plaintiffs have to satisfy all three prongs of the Dream Act. What about the F-bar willfulness penalty also? Isn't there an additional penalty? That is a separate penalty, Your Honor, yes, and the plaintiffs do in the proposed amended complaint allege that they have account balances that would subject them to the F-bar requirement, but they still need to satisfy all three prongs of the Driehaus test in order to bring their Eighth Amendment challenge. With one exception, none of them can even clear the first of those three hurdles because except for Mark Zell, none of the plaintiffs allege is an intention to take any action arguably prescribed by the statute. And with Susan B., they said, you know, yes, we want to attack Congressman Driehaus again. Exactly, Your Honor, and as to Mr. Zell, he doesn't satisfy either of the other requirements in Driehaus. His action of failing to file an F-bar is not arguably affected with a constitutional interest. The only proposed such interest that plaintiffs identify is this nonexistent constitutional privacy interest. Moreover, Mr. Zell has not only failed to allege that the government has previously enforced the F-bar penalty against him, he has not alleged that the government has taken any steps whatsoever to enforce an F-bar penalty against him in the future. Finally, Your Honor, just to return briefly to the F-bar reporting requirement, none of the plaintiffs, with one arguable exception, makes any attempt to allege a concrete injury in relation to that requirement. Rather, the plaintiffs simply state that they dislike the requirement and would rather not file an F-bar for him. But that's a textbook generalized grievance that can't give rise to standing. The arguable exception is Lois Kuttel, who in the proposed amended complaint alleges that she would like to have an account in her own name, but that her parents will not transfer the account to her because they would not want to file an F-bar on her behalf. But for the same reasons that Johnson's separation of assets isn't traceable to FATCA, this alleged injury isn't traceable to the F-bar requirement. Nothing about the F-bar prevents Lois' parents from transferring the account to her. They could do so today if they wished. And Lois' parents won't transfer the account to her, she alleges, because they erroneously believe that it invades her constitutional right to privacy to file an F-bar. Now, is that the same as the claim that they can't take advantage of the Swiss education or child credit? There they seem to say that because of their relationship they can no longer take advantage of this concrete benefit. Your Honor, my understanding from the proposed amended complaint is that the Swiss financial institution that currently holds the account would, in fact, offer Lois better terms than her father currently receives if the account were transferred to her name. The only kind of hitch in the transfer that's alleged in the complaint is her parents' unwillingness to transfer the account. But the key harm has to be a constitutional harm as opposed to a financial harm, right? Well, as to the... The violation of a constitutional right. To bring a pre-enforcement challenge, yes, that's correct, Your Honor. And Lois Kudel's only alleged harm here is the claim that she's alleging an economic harm on the basis of her parents' erroneous view of the Constitution, put it that way. So her economic injury would be traceable to her parents and not to the F-bar requirement. Finally, Your Honor, just to address the Israeli intergovernmental agreement briefly, because that has gone into force now. The entry into force of that agreement changes nothing with respect to the analysis concerning the reporting requirements. Zell is the only Israeli plaintiff who lives in Israel or does bank with Israeli financial institutions. And again, he has not alleged that he personally has any accounts subject to FATCA reporting. And as to his attempt to bring a pre-enforcement challenge to the withholding taxes under FATCA, because the IGA is now in force, the withholding tax generally remains suspended as to Israeli financial institutions and account holders in those institutions. Moreover, it's not possible on the face of the complaint for either type of withholding tax to be applied to Mr. Zell. Let me stop you. Was the point you made that an IGA or this IGA suspends the application of the 30% withholding? Yes, Your Honor. As a general matter, at least so long as financial institutions are reporting under the intergovernmental agreement, they are not subject to a withholding tax and they are not required to withhold tax on recalcitrant account holders. Although what you just said, it's not just the existence of the IGA, it's that they then comply with the IGA, which requires them to report certain things, doesn't it? Yes, the IGA, there is reporting under the IGA, but again Mr. Zell doesn't have any accounts that would be subject to that reporting, or at least he hasn't alleged that he has any accounts that would be subject to that reporting. So even if there were a financial institution that was noncompliant and even if the government then decided to apply the withholding tax, there would be no withholding against Mr. Zell and he certainly can't be subjected to the withholding tax on financial institutions because he is himself not a financial institution. No, their argument is based on the draconian nature. In fact, I just saw there are many quick words going through there. The IGA says that the financial institution will make certain reports, but if they do that then they can't be subject to the pass-through penalty? I believe that's correct, Your Honor, and the suspension of the withholding taxes is in Article 4, Sections 1 and 2 of the Model 1 Intergovernmental Agreements, a category that includes the agreement with Israel. Thank you. If there are no further questions, thank you very much for your time. Mr. Shiler, anything from you? No, thank you. Thank you, Your Honor. On your question about the nature of the injury, it does not have to be a constitutional injury. This is standing. That is, is there a case or controversy? You can have standing and still lose your case. So the second inquiry, after you determine standing, is the merits of the case. And so the issue is, has this adversely affected these plaintiffs? And there are numerous ways in which they have been adversely affected. And the problem is that the government has conflated the merits of the case with the ability of having recognized standing to simply make your claims. Those are different. Now ---- So just to reverse that statement that you have to have a constitutional injury for reinforcement challenge, you're saying that's a merits-based argument, not a standing argument? The one that the government makes. I mean, your allegation is that you're going to engage in a course in conduct, arguably affected by the statute that you're challenging. Okay? Arguably affected. Now, I mean, the injuries are they have been denied bank accounts, Crawford, Zell, and Mr. Kuchel, that they filed reports that they believe disclose confidential financial information that they don't want to disclose, Crawford. They have refused to file reports subjecting them to potential penalties, i.e., Zell. And not only has he failed to file the required individual reports when they were required before the effectiveness of the IGA, but he is also at risk right now of being considered to be a recalcitrant account holder because he has refused to provide information to the bank upon request when they're trying to figure out if he's a U.S. account holder so that they can terminate his account. So he is also potentially subject to those. Suppose the complaint said that these people had only $2,000 in their account. Would they have standing to go forward? If that was the only allegation, no. So when they don't say how much they have in their accounts, why do they have standing? Well, there's two amounts that are at stake here, the FBAR report, which is $10,000, and the FATCA reporting, which is $50,000 at the end. And do they say that they exceed that amount in either instance? Yes, yes. Several plaintiffs say that either the amount is over $10,000 or they would place enough money in it to make it over $10,000 but for the FATCA, the FBAR requirement that they'd have to report it. So you're dealing then with the FBAR, but what about the FATCA? Well, that was my next point because there's two different ones. Mr. Johnson has sworn that he has an account whose balance has exceeded $75,000, which triggers the FATCA reporting, and Mr. Zell has said he has foreign accounts in excess of $200,000. Now, these are in the amended complaint. On Zell, are these the ones that he's signatory as opposed to personal? That he is a signatory. And we believe that, contrary to the statement of the government, is that that triggers FATCA reporting. I asked your opponent whether if there were actual allegations exceeding $200,000, would that be enough. My belief is that his answer was no because it had to be a constitutional injury, and your answer is yes. Yes, you're affected by the statute. What case would you tell us to look at? I know we've been told to look at Bolton and to look at Dry House.  I think those are the leading cases. We may have cited another one in our brief. I think those are the leading cases. The plaintiffs have alleged that they are refusing to transfer an account to a U.S. citizen who's a child, so she's deprived of those resources and is now a proposed plaintiff. They couldn't get a mortgage because they were a U.S. citizen until they renounced their citizenship. Nelson, that they lost ownership of assets by foreign spouses. Now, I mean, this is so strange. If somebody obeys the speed limit, they call that a voluntary choice not affected by the speed limit. I mean, what happens when you don't obey the speed limit? Well, you're subject to a penalty. Well, is that a voluntary choice that you're only going to go 55 in order to avoid the penalty? You say we lowered the energy crisis, we lowered the speed limit, whatever, to 55. Could a person say, I want to violate the speed limit because I want to visit my dying mother and I need to get there faster, would that give them standing to challenge that? Yeah, they would have standing. They would probably lose the case because there's no constitutional right to exceed the speed limit. I mean, there's a general right to travel. I suppose they would allege that. But that would be a reasonable restriction that doesn't unduly burden that right. You're saying they have to have a constitutional right there. To win the case, not to have standing. You are saying that in my example where they allege, in effect, a concrete harm that they can obviate by violating the limit, but either they have to violate the limit or they incur the harm, you would say there is standing in that case. It sounds like there would be standing. There would be a constitutional right to travel that they could allege as their basis of their merits claim. But I would say they are very likely to lose it for compelling governmental reasons. But, in fact, by the way, speed limits have been challenged on constitutional grounds, unsuccessfully. Thank you. Okay, thank you. The case will be submitted. The remaining cases will be submitted on the briefs. The clerk may adjourn court.